## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**KIMBERLY LYNN CRICK**                                                         **PLAINTIFF**

**V.**                          **NO. 4:24CV01026-KGB-PSH**

**LELAND DUDEK, ACTING**
**COMMISSIONER of the**
**SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Chief Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

I.    **Introduction:**

Plaintiff, Kimberly Lynn Crick ("Ms. Crick"), filed an application for Title II disability and disability insurance benefits on January 19, 2022. (Tr. at 74). In the application, Ms. Crick alleged disability beginning on July 31, 2021. *Id*. The

1

application was denied initially and upon reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") found that Ms. Crick was not disabled. (Tr. at 74-89). On October 31, 2024, the Appeals Council, having discussed new evidence provided by Ms. Crick, denied her request for review of the hearing decision. (Tr. at 1-6). This decision stands as the final decision of the Commissioner, and Ms. Crick has requested judicial review.

For the reasons stated below, this Court should affirm the ALJ's decision and enter judgment for Defendant.

## II.    **The Commissioner's Decision**:

The ALJ found that Ms. Crick, who was 51 years old on the alleged onset date, meets the insured status requirement of the Social Security Act through March 31, 2026. (Tr. at 77, 87). The ALJ next found that Ms. Crick had not engaged in substantial gainful activity since the alleged onset date of July 31, 2021.[1]  *Id*. At Step Two, the ALJ found that Ms. Crick had the following severe impairments: spinal stenosis with scoliosis and bilateral lower extremity neuropathy, carpal tunnel

---

[1] An ALJ must follow the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

*syndrome bilaterally, obesity, and tobacco abuse. Id.*

After finding that Ms. Crick's impairments did not meet or equal a Listing,[2] the ALJ determined that Ms. Crick had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional limitations: (1) she cannot climb ladders, ropes, and scaffolds; (2) she can no more than frequently walk on ramps and stairs; (3) she can no more than occasionally balance, stoop, kneel, crouch, and crawl; (4) she can no more than frequently reach, handle, and finger with the bilateral upper extremities; and (5) she should avoid concentrated exposure to dust, fumes, and inhalant irritants. (Tr. at 79-81).

The ALJ determined that Ms. Crick was unable to perform any past relevant work. (Tr. at 87). At Step Five, the ALJ relied on the testimony of a Vocational Expert (VE) to find that, considering Ms. Crick's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform, such as sitting room attendant, storage facility rental clerk, and mail clerk (non-postal). (Tr. at 87-89). Thus, the ALJ found that Ms. Crick was not disabled. *Id.*

## III.  Discussion:

### A.  Standard of Review

---

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

4

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B.    Factual Background

Ms. Crick alleged that she had disabling back and neck pain. In August 2022, a lumbar MRI revealed scoliosis, bulging discs, and chronic disc degeneration. (Tr. at 84). A November 2023 cervical MRI showed degenerative disc disease with foraminal stenosis, T7 compression fracture, edema, and mild upper thoracic levocurvature and mild lower thoracic dextrocurvature. (Tr. at 85, 964-966). Clinical exam showed some discomfort on flexion and extension in Ms. Crick's back and neck, but she had otherwise normal musculoskeletal exams, with generally normal gait, grossly normal strength and reflexes, and only mildly limited range of motion.[3] (Tr. at 440-444, 555, 489, 600, 634-642, 710, 721, 934-949). At a September 2023 doctor's appointment, Ms. Crick had no tenderness in her cervical, thoracic, or lumbar spines. (Tr. at 933). Moreover, no doctor prescribed an assistive device. Ms.

---

[3] Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

Crick was referred to physical therapy, but there is no evidence indicating she pursued that. (Tr. at 83).

Ms. Crick treated back and neck pain conservatively; she said she did not take pain medications, instead treating with medical marijuana oil or gummies. (Tr. at 107). She declined to have back or neck surgery. (Tr. at 106). She did undergo medial branch blocks in December 2022 and January 2023, and as a result, her pain lessened to a 2 or 3 on a 10-point scale.[4]  (Tr. at 84-85, 611-614).

Ms. Crick had bilateral carpal tunnel syndrome, but she only had surgery on her right hand and not her left. (Tr. at 83, 111, 505). Ms. Crick said she was doing much better after surgery. (Tr. at 955). She had bilateral full range of motion in her hands and her doctor said to follow up with conservative treatment. *Id.* Ms. Crick said hand pain was manageable with medication.[5]  (Tr. at 565). She had strong and equal grip bilaterally at a doctor's appointment in February 2022. (Tr. at 83, 465).

Although Ms. Crick asserts that she had severe mental impairments, she did not regularly treat with a psychiatrist or counselor (only four psychiatric appointments in late 2023), and she never required an inpatient hospitalization. (Tr.

---

[4] Improvement in condition supports an ALJ's finding that a claimant is not disabled. See *Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

[5] Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

at 79, 562, 578, 816). Ms. Crick's PCP noted in 2021 that she refused to go to counseling and Ms. Crick had discontinued Trazadone.[6] (Tr. at 816). While Ms. Crick sometimes presented as anxious, mental status examinations showed normal memory, logical thought process, and average intelligence. (Tr. at 78, 465, 479, 498, 969-981). She was calm and cooperative with no difficulty interacting with others. (Tr. at 79, 319-321, 479, 495, 498, 969, 981, 992, 1005, 1011, 1019). Ms. Crick denied difficulty in understanding or following spoken instructions. (Tr. at 319, 321).

Ms. Crick admitted to performing a variety of daily activities. She said she could manage her own personal care, prepare meals, perform chores, and ride in a car. (Tr. at 315-323, 440, 615). Ms. Crick indicated that, during the relevant time-period, she carried an 80-pound pallet, cleaned house vigorously, used her hands a lot, worked in her yard, rode a tractor, and used a jigsaw. (Tr. at 85, 317-323, 439, 493, 510, 816, 955). The ability to perform such tasks undermines Ms. Crick's contention that she is disabled.[7]

---

[6] Refusal to follow a prescribed course of treatment undercuts a claimant's allegations of disability. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997).

[7] *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

### C. Ms. Crick's Arguments on Appeal

Ms. Crick contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. Specifically, she argues that the RFC did not fully incorporate all of her limitations, that the Appeals Council did not properly consider recent evidence, and that she had severe mental impairments.

### 1. RFC

Ms. Crick especially takes issue with the reaching limitation that the ALJ assigned in the RFC. He limited Ms. Crick to frequent reaching, handling, and fingering with the bilateral upper extremities. (Tr. at 81). In doing so, he harmonized two state-agency medical experts' RFC findings.[8]

The first state-agency reviewing medical expert, Dr. Ken Murphy, M.D., examined the medical record and opined, in October 2022, that Ms. Crick could perform light work; he stated that she had no reaching limitations. (Tr. at 121, 129). Dr. Rosey Seguin-Calderon, M.D., reviewed the records and opined, in May 2023, that Ms. Crick could perform light work, with only occasional reaching overhead.

---

[8] A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

(Tr. at 129-133).

The ALJ found these opinions to be persuasive, given regularly normal gait and conservative treatment. (Tr. at 85). He added that Ms. Crick only treated with marijuana gummies or oil. *Id*. At other points in the opinion, the ALJ pointed to Ms. Crick's daily activities, indicating these were not as limited as alleged. The opinions were supported by the record as a whole.

The ALJ harmonized the two opinions, settling on an RFC for reaching that was somewhere in the middle (frequent reaching with the bilateral upper extremities), and he supported this RFC throughout the opinion. Indeed, as mentioned above, musculoskeletal exams were grossly normal and Ms. Crick declined surgery on her back or neck. In September 2023, Ms. Crick had no tenderness in her lumbar, thoracic, or cervical spine. Furthermore, conservative treatment improved her symptoms.

An ALJ is not bound to rely on any particular medical opinion, and he can decline to incorporate any portions of an opinion that he deems inconsistent.[9] The ALJ properly discussed the medical expert opinions and incorporated the portions of the opinions that aligned with the balance of the evidence. He did not err in his

---

[9] See *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000); *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011); *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

RFC finding about reaching.[10]

While Ms. Crick asserts that the RFC for light work outstripped her abilities, light work requires the ability to lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, a good deal of walking or standing, and involving some pushing and pulling of arm or leg controls when sitting most of the time. 20 C.F.R. § 404.1567. Ms. Crick's daily activities alone demonstrate that she could perform the requirements of light work. As noted above, Ms. Crick did some things in her spare time that required lifting and walking typical of light work. Again, Ms. Crick's conservative treatment for her back and neck and her positive response to treatment suggest she was not as limited as alleged. The ALJ fully discussed the relevant findings and opinions, and his RFC for light work was consistent with the record evidence.

2. Evidence submitted to the Appeals Council

Ms. Crick submitted the opinion of Dr. Franklin Chambers, M.D., to the Appeals Council.[11] (Tr. at 71, 411, 1040-1041). The two-page checkbox opinion

---

[10] Ms. Crick asserts that there was an unresolved conflict between the RFC and the jobs identified by the VE. This is misplaced, because the jobs identified allowed for frequent reaching, just like the RFC. Dictionary of Occupational Titles, 299.677-010, 209.687-026, 295.367-026. Had the ALJ limited Ms. Crick to occasional reaching, there may have been a possible conflict, but given the actual RFC, the Court sees no unresolved conflict.

[11] Ms. Crick did not give any explanation for why she did not submit the evidence directly to the ALJ.

was dated January 29, 2024, or seven days prior to the ALJ's decision. Dr. Chambers did not indicate how long or how often he treated Ms. Crick. *Id*. In the opinion, Dr. Chambers said that Ms. Crick could not perform even sedentary exertional work due to back pain and leg numbness. (Tr. at 1040-1041). There was no citation to record evidence and very little elaboration in the opinion.[12] *Id*.

The Appeals Council concluded that there was not a reasonable probability that Dr. Chambers' opinion would change the outcome of the ALJ's decision and denied Ms. Crick's request for review of the hearing decision. (Tr. at 1-2). The Appeals Council did not exhibit the opinion, but it can be found at pp. 1040-1041 of the record, at docket entry 9.[13]

Ms. Crick argues now that the opinion would have changed the ALJ's decision. When the Appeals Council declines to review a hearing decision, a court will not conduct its own analysis about whether the new evidence would have

---

[12] Short checkbox opinions may properly be discounted, if they are conclusory or unsupported by relevant medical evidence. See *Thomas v. Berryhill*, 881 F.3d 672, 675-676 (8th Cir. 2018).

[13] Ms. Crick suggests that the Appeals Council erred by not making the opinion evidence part of the administrative record, but she stated in her brief that "the act of considering Dr. Chambers' opinion evidence makes it part of the administrative record for court review." Docket entry 7 at p. 14. And the evidence is indeed part of the record now in front of the Court. In any event, the Appeals Council discussed the evidence in its decision, showing that it received and appraised the evidence when denying Ms. Crick's request for review.

changed the outcome, but instead decides if substantial evidence supports the decision, in light of the new evidence.[14] The Court does not find fault with the Appeals Council's finding; given the record of conservative treatment, positive response to treatment, and ability to perform daily activities, there is record support for the ALJ's decision. The ALJ adequately explained how Ms. Crick would be able to perform light exertional work, and the Appeals Council discharged its duty in reviewing new evidence.

### 3. Mental Impairments

Ms. Crick's argument that mental impairments were severe fails as well. While on occasion, Ms. Crick endorsed anxiety and depression, she did not seek regular and continuing psychiatric treatment or take any psychiatrist-prescribed medication. Ms. Crick had grossly normal mental status examinations. (Tr. at 969, 972, 981). She was pleasant and cooperative with her providers. She could perform daily activities. On a 2022 function report, Ms. Crick denied having difficulty performing a variety of mental tasks (in a 2023 function report she endorsed some mental difficulties). (Tr. at 315-323, 351-364). The state-agency psychiatric experts considered the lack of treatment and Ms. Crick's daily activities and found that mental impairments were nonsevere. (Tr. at 119-121, 127-129). The ALJ found

---

[14] *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

these opinions persuasive, and the record supported those conclusions. (Tr. at 85-86).

## IV.  **Conclusion**:

There is substantial evidence to support the Commissioner's decision that Ms. Crick was not disabled. The RFC incorporated all of Ms. Crick's credible limitations, new evidence did not show a probability it would have changed the outcome, and the ALJ did not err in finding Ms. Crick did not have severe mental impairments. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 22nd day of April, 2025.

_____
UNITED STATES MAGISTRATE JUDGE